USCA1 Opinion

 

 April 26, 1994 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-2067 UNITED STATES OF AMERICA, Appellee, v. PHILIP PLOURDE, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. D. Brock Hornby, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Pettine,* Senior District Judge. _____________________ ____________________ Tina Schneider, by Appointment of the Court, for appellant. ______________ Margaret D. McGaughey, Assistant United States Attorney, with ______________________ whom Jay P. McCloskey, United States Attorney, and Jonathan R. __________________ ____________ Chapman, Assistant United States Attorney, were on brief for appellee. _______ ____________________ ____________________ ____________________ *Of the District of Rhode Island, sitting by designation. COFFIN, Senior Circuit Judge. Appellant was convicted of _____________________ conspiracy to possess with intent to distribute heroin and possession with intent to distribute heroin, in violation of 21 U.S.C. 841(a)(1) and (b)(1)(c) and 21 U.S.C. 846. He appeals on two grounds: first, that there was insufficient evidence of conspiracy to support his conviction; and second, that the district court erred in calculating his sentence by underestimating the quantity of heroin appellant had for his personal use. We conclude that neither claim succeeds. Sufficiency of the evidence. We shall, of course, take the ____________________________ evidence and reasonable inferences therefrom in the light most favorable to the verdict. United States v. Moran, 984 F.2d 1299, _____________ _____ 1300 (1st Cir. 1993). And we shall, without narrating the entire series of events leading to this prosecution, allude to evidence only insofar as the sufficiency issue requires. Appellant, who bought heroin from Wilfredo Figueroa, a Lawrence, Massachusetts supplier, and sold to a number of customers in Maine, argues that the evidence proves only that he was a mere customer of Figueroa. He makes the following points: others bought in larger quantities from the supplier; the supplier knew that appellant, who customarily consumed some heroin at the time of purchase, had a serious addiction to the drug; the supplier never requested appellant to sell for him or discussed distribution with him or extended any credit to him; and no drug distribution paraphernalia (such as scales or drug ledgers) were found that could be attributed to appellant. The contrary evidence, however, was cumulatively impressive. This included: the continuity and duration of appellant's dealings with Figueroa (at least five trips and fifty bags a week for ten weeks); appellant's actual knowledge that some of the heroin he bought from Figueroa was supplied by Soto, and inferred knowledge of a third source of the heroin bought from Figueroa; sales on a fairly steady basis to several identified customers in Maine (Babbitt, Poland, Kierstead), as well as some customers not identified but whose existence could be inferred; conversations in which appellant revealed to Figueroa the prices he was charging Maine buyers, apologized to Soto for "the people here in Maine" who preferred another product to his, and in which he told of future plans to sell heroin in Maine; the quantities purchased by appellant, which were significantly in excess of any estimate of appellant's own consumption; and, finally, the fact that, although appellant was without income and living on workman's compensation at the time, some $500 in cash was found in his bedroom when he was arrested. This was sufficient evidence to support both a jury determination that appellant had joined with others in an agreement to distribute heroin and that he intended to commit the substantive offense. Calculation of drug quantity and base offense level. In ______________________________________________________ determining appellant's sentence, the judge accepted the conservative estimates of the total quantities of heroin involved set forth in the Presentence Investigation Report (PSR), and arrived at a total figure of 175.4 grams. Based on an average -3- consumption of 25 bags per week, and applying appropriate weights for the different time periods involved, the judge calculated appellant's total consumption at 60.25 grams. Subtracting this from 175.4 still left a net quantity of slightly over 115 grams. Accordingly, the judge concluded that, even taking into account appellant's personal heroin consumption, the relevant drug quantity would be still be in excess of 100 grams. Thus, regardless of whether or not the district judge excluded appellant's personal heroin consumption in determining the relevant drug quantity, his base offense level under U.S.S.G. 2D1.1(10) would be 26. Appellant now claims that the evidence was that he consumed an average of five to six bags a day, or 35 to 42 bags a week. Cumulating these quantities at appropriate weights per bag, he arrives at a personal use figure of 84.35 grams, which, when deducted from the total quantity, would produce a net figure of 91.05 grams, and a base offense level of 24. Even if, as appellant suggests, the trial court were required to exclude the quantity of drugs he possessed for personal use in calculating his base offense level under the Sentencing Guidelines, see, e.g., United States v. Kipp, 10 F.3d ___ ____ _____________ ____ 1463, 1465-66 (9th Cir. 1993), this claim would fail. On the merits, there is sufficient evidence on the record from which the trial judge properly could conclude that appellant's personal use was, on average, 25 bags per week, and therefore, in excess of 100 grams of heroin were involved in the offense conduct. And -4- wholly apart from the merits of the claim, this issue has not been preserved for review. To begin, appellant's testimony at trial as to his consumption was something less than certain. He testified that after getting out of a treatment program in October 8, 1991, he felt "pretty good," but that by the beginning of November, he "ended up using again." At this time, he bought one bag at a time, and got high once every four or five days, and then, by mid-November, three or four times every week. He also testified that at the time of his arrest in August 1992, "maybe" he used five bags a day. In addition, the evidence showed that appellant bought fluctuating amounts of heroin over time, and that during the course of the conspiracy, he spent two separate periods of time in a substance abuse treatment program, in an effort to treat his heroin addiction. This evidence suggests that appellant's personal consumption likely could have varied relative to the amount of heroin available to him, and to his efforts at rehabilitation. Finally, the PSR stated that "[p]rior to his arrest, the defendant reports that his habit involved using up to 20 bags of heroin a week." Based on all of this evidence, the district judge fairly could conclude that an average of 25 bags per week was representative of appellant's average consumption over time. In any event, appellant has waived this claim. He raised no objection to the PSR's estimate that he had "up to" a 20 bag per -5- week habit. Even more important, at the sentencing hearing, appellant made no suggestion that the judge had erred in his calculations as to appellant's personal consumption -- a subject that the judge himself had introduced. We note, in addition, that at oral argument before us, appellant's counsel contended that anyone with a habit requiring five bags a day could not get by on 25 bags a week because he could not "take off two days a week." But at the sentencing proceeding, trial counsel for appellant, in an effort to minimize the total quantity involved, argued that when appellant "couldn't make the five bag a day habit which his cross-examination in trial showed he simply stayed home and suffered." The judge was obviously committing no error, clear or otherwise, in harboring the same assumption. Finally, at the conclusion of the sentencing hearing, the judge asked for any corrections. Counsel for both prosecution and defense expressed themselves as satisfied. We conclude by observing that no injustice has been done in this case. The court, by accepting conservative estimates of total quantities involved, which were substantially below those justified by some of the testimony, has been most fair to appellant. Affirmed. ________ -6-